## McCardle v. Aldinger

*Leslie M. Fields,* for plaintiffs.
*Tracey Benson,* for defendant Aldinger.
*Walter F. Wall,* for defendant Grill.

KOPRIVA, *J.,* October 11, 1996—Before this court for disposition are preliminary objections filed by both defendants. The court heard oral argument on August

23, 1996. The issues raised by the defendants are nearly identical and we frame them as follows:

(I) Whether the wrongful death and survival actions should be stricken as not encompassed by the writ of summons and therefore not properly served on the defendants?

(II) Whether the complaint should be stricken for failure to comply with Pennsylvania Rules of Civil Procedure 1020?

(III) Whether the complaint fails to set forth a claim for punitive damages?

(IV) Whether the complaint fails to set forth a cause of action for negligent infliction of emotional distress?

(V) Whether the general allegations of negligence should be stricken?

Complaint in this medical malpractice action was filed on April 1, 1996. The allegations contained therein pertain to alleged malpractice regarding the prenatal care provided to plaintiff Nicole McCardle. Mrs. McCardle received care from the defendant from April 1993 until October 25, 1993, when her baby was stillborn. It is claimed the infant's death, in utero, on or about October 25, 1993, is attributed to the negligent prenatal care provided by the defendants. The complaint attempts to set forth causes of action for wrongful death and survival on behalf of decedent Russell McCardle in addition to the individual claims of the parents Nicole and Kevin McCardle for negligence.

I.

This lawsuit was commenced on October 16, 1995 by the filing of a writ of summons. The writ was properly served. The writ listed as plaintiffs Nicole McCardle and Kevin McCardle, her husband. The defendants both

filed rules upon the plaintiffs to file a complaint. The instant complaint was docketed on April 1, 1996. Upon reviewing the complaint, it is clear the action is filed on behalf of the death of their child and not solely for the individual claims of the parents, as the writ would lead one to believe. The defendants argue the complaint is not properly served to commence an action on behalf of the estate of Russell McCardle.

We frame the issue not as one of "service," but rather as whether the writ of summons encompassed the actions on behalf of the decedent. Defendants assert the writ commenced a lawsuit only for the parents in their individual capacities. The writ makes no reference to the estate of Russell McCardle or that his parents are maintaining suit on behalf of the estate. Therefore, defendants assert the claims for wrongful death and survival should be stricken as the complaint was not properly served as original process. We note it is not disputed the writ was properly served as original process. The defendants' argument rests on their belief the writ does not encompass the wrongful death and survival claims.

Plaintiffs respond to this argument by claiming that counsel for defendants was aware of the nature of the cause of action. They assert the caption fairly reflects the two persons lawfully entitled and logically situated to bring suit for the death of their child. "That the McCardles were not formally designated as co-administrators of their son's estate at the time suit was commenced is immaterial, for it was very certain that they as named plaintiffs would become co-administrators of the estate and that the complaint would eventually be filed in that capacity." (Plaintiffs' brief in opposition p. 6.)

Plaintiffs assert that if the caption must list the McCardles as administrators of their son's estate, the

appropriate remedy is to grant them leave to amend. This court would agree that is a logical solution but for the fact that the statute of limitations has run. The question now becomes: Is the captioning of the estate merely a technical amendment, or does it amount to the addition of a new plaintiff after the statute has expired?

Clearly, the caption of this action as it appears on the writ of summons is inconsistent with the allegations contained in the complaint. The appropriate caption should read, "Nicole McCardle and Kevin McCardle, her husband, as co-administrators of the estate of Russell McCardle and Nicole McCardle and Kevin McCardle in their own right." Such a caption, had it appeared on the writ of summons, would leave no room for doubt as to the potential claims to be raised in a subsequent complaint. Is the addition of the "estate" to the caption appropriate, or does it amount to adding a new party to this lawsuit after the statute has expired?

In considering this issue, we must examine the nature of wrongful death actions as opposed to survival actions. They are clearly separate and distinct causes of action. *Frey v. Pennsylvania Electric Company,* 414 Pa. Super. 535, 607 A.2d 796 (1992), *alloc. denied,* 532 Pa. 645, 614 A.2d 1142 (1992). In a survival action, the decedent's estate sues on behalf of the decedent for claims the decedent could have pursued but for his or her death. *Id.* Survival actions pursue recovery for loss to the estate resulting from a tort. *Kiser v. Shulte,* 538 Pa. 219, 648 A.2d 1 (1994).

An action for wrongful death is for the benefit of specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the

estate. *Frey, supra.* The statute, 42 Pa.C.S. §8301, specifies at subsection (b) that the right of action "shall exist for the benefit of the spouse, children or parents of the deceased." In the instant action, the named plaintiffs are the only individuals with a right of recovery under a wrongful death claim.

After an exhaustive search of the case law, we have reached the conclusion that plaintiffs may amend the caption to pursue the wrongful death claim, but they may not pursue the survival action. The amendment necessary to properly caption the death action is a technical amendment and does not add a party to this lawsuit. *Usner v. Duersmith,* 346 Pa. 494, 31 A.2d 149 (1943). Any damages recovered through the death action go to the parents and are not an asset of the estate. The death action is the parents' statutorily created cause of action for monetary loss they sustained as a result of the death of their child.

On the other hand, the survival action is for the benefit of the decedent's estate and the parents have no *individual* standing to maintain this claim. *Stredny v. Wyeth Laboratories,* 58 D.&C.2d 665 (1972). A survival action must be brought by the administrator of the estate to benefit the estate itself. *In re Estate of Merryman,* 669 A.2d 1059 (Pa. Commw. 1995); *Guiton v. Pennsylvania National Mutual Casualty Insurance Co.,* 301 Pa. Super. 146, 447 A.2d 284 (1982). The estate is a separate "individual" and was not named as a party in the original writ of summons. The complaint at issue, by pleading a survival action, necessitates the presence of the estate in the action. While the parents are in fact at this time the co-administrators of their child's estate, they did not bring the action in that capacity, but only indi-

vidually. To permit amendment of the caption to add the estate would be adding a new plaintiff as well as a new cause of action. This type of amendment is barred by the statute of limitations. *Cheney v. Carver,* 370 Pa. 543, 88 A.2d 746 (1952).

We note that plaintiffs argue the relation-back doctrine should be applied in this situation. We find the doctrine is not applicable to the facts of this case. The cases cited by plaintiffs in their brief are distinguishable and involve instances where individuals are identified in pleadings as *acting* on behalf of an estate *prior* to the actual creation of the estate. The courts in those cases validated the acts of the administrators because what was indicated in the pleading (*i.e.* that they were administrators of an estate) was subsequently accomplished. Had the McCardles listed themselves as the co-administrators of their son's estate on the writ of summons, the relation-back doctrine could be applied. In this case, there are no acts to validate because plaintiffs did not indicate in the writ of summons that they were acting on behalf of an estate.

This is an unfortunate set of facts, but we find the law directs the survival claim must be stricken from the complaint. We are painfully aware that the failure to list the proper plaintiff capable of maintaining that cause of action is a defect that may not be remedied by any other avenue due to the undisputed expiration of the statute of limitations.

## II.

Defendants next assert the complaint fails to conform to Pennsylvania Rule of Civil Procedure 1020. There is merit to this objection. The causes of action should

be distinguished and each pled in a separate count. We will require plaintiffs to file an amended complaint to separately set forth each cause of action for which relief is sought.

### III.

The complaint requests punitive damages. Defendants argue there are no allegations to support the requests for punitive damages and move that they be stricken from the complaint. Plaintiffs assert the averments contained within the complaint exhibit the defendants' reckless indifference with regard to the care of their patient.

We have reviewed the complaint to determine if the allegations set forth the sort of reckless indifference required to warrant the pursuit of punitive damages. See *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989). In order to establish a legitimate request for a punitive claim, acts or omissions must constitute more than ordinary negligence. *McDaniel v. Merck, Sharp and Dohme,* 367 Pa. Super. 600, 533 A.2d 436 (1987). It is not the outcome of the alleged negligence that is of consideration, but rather the alleged conduct of defendants that is at issue.

The court has reviewed at length the numerous assertions of negligent care stated in the complaint. While the cause of action in negligence is apparent, we do not find conduct which rises above negligence. Accepting all the plaintiffs' allegations as true, we do not find the sort of outrageous acts such that the claim for punitive damages may even be pursued. We will accordingly strike the requests for punitive damages as well as the additional language contained within the complaint.

## IV.

Plaintiffs further assert a claim for emotional distress resulting from the death of their child. Defendants argue the claim should be dismissed as the complaint fails to allege the occurrence of any specific act of negligence on the part of defendants that plaintiffs observed and from which they consequently suffered harm.

Plaintiffs begin their argument by requesting this court to apply the "direct victim" theory as opposed to the traditional bystander liability theory of negligent infliction of emotional distress. The "direct victim" case law is a creation of the California courts and has not been adopted by this Commonwealth. Plaintiff cites a 1988 common pleas opinion from Lancaster County in which California case law was examined and utilized. However, there have been no appellate decisions since that time and we will decline to employ a legal theory that has not been adopted by this Commonwealth.

We turn to the law of this Commonwealth regarding the negligent infliction of emotional distress as established in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). The elements of this cause of action are:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

"(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

"(3) Whether plaintiff and the victim were closely related . . . ." *Id.* at 171, 404 A.2d at 685.

Clearly, the third element of this test is met. With regard to Ms. McCardle, she was obviously near the

scene of the injury, as her son died in utero. She was directly involved with the alleged negligence as the negligent care was rendered to her. The dispute arises over the second factor. Did Ms. McCardle witness the negligence and resulting injury? Defendants assert she could not have had concurrent awareness of the harm because she did not learn of the baby's death until after the fact. Case law instructs the basis of recovery for a claim of negligent infliction of emotional distress is the traumatic impact of viewing the negligent injury of a close relative. *Hoffner v. Hodge,* 47 Pa. Commw. 277, 407 A.2d 940 (1979).

While we were unable to find case law with facts similar, we liken the instant matter to the case of *Love v. Cramer,* 414 Pa. Super. 231, 606 A.2d 1175 (1992), *alloc. denied,* 533 Pa. 634, 621 A.2d 580 (1992). The plaintiff in *Love* witnessed the death of her mother from heart failure. She had suspected her mother was having trouble and took her to her physician but the physician refused to investigate the possibility of a heart condition. The plaintiff observed both the traumatic event of her mother's death and the alleged malpractice. Even though the injury and the negligent care were not concurrent, the plaintiff was allowed to pursue her claim.

Likewise, in the situation sub judice, Nicole McCardle was a party to the negligent care and experienced the death of her son in utero as well as the stillbirth. The complaint does not indicate whether Mr. McCardle witnessed the negligence. For example, if he did not attend the appointments with his wife, he did not observe the negligent conduct and may not pursue a claim for emotional distress. We will permit plaintiffs to amend the complaint to set forth in a separate count the facts supporting both individual's causes of action. We find

the complaint is capable of amendment if the facts list and direct the claim be fully and specifically set forth in line with the applicable case law cited.

## V.

Finally, defendants complain of general allegations of negligence. We find the complaint as a whole to be repetitive and undirected. The allegations of negligence are contained in paragraphs 21, 39, and 43. There is no reason for paragraph 21 to contain anything other than facts, yet allegations of negligence are scattered throughout, and it is impossible for the defendants to appropriately respond. We direct paragraph 21 to be amended to set forth the facts only of this lawsuit. Allegations of negligence shall be separately set forth in a count for each individual defendant. The theory of negligence is clear and could certainly be more focused than it is currently pled.

This complaint requires extensive amendment before it is ready for a response. Most facts and allegations are present, however, they need to be separated and set forth in a logical fashion.

In accordance with this opinion, we enter the following:

## ORDER

And now, October 11, 1996, this court having heard defendants' preliminary objections, it is hereby ordered, directed and decreed as follows:

(1) The survival action is hereby stricken from the complaint.

(2) Plaintiffs may pursue the wrongful death action and shall amend the caption accordingly.

(3) The wrongful death action shall be set forth in a separate count against each defendant.

(4) The request for punitive damages is stricken from the complaint. The amended complaint shall eliminate the language from paragraphs 23, 37, 38, 43, 44, and 45.

(5) Plaintiffs may pursue a claim for negligent infliction of emotional distress. This cause of action shall be set forth in a separate count with facts supporting the claim if it can fairly be done.

(6) Paragraph 21 shall be amended to contain purely factual allegations. The averments of negligent care shall be enumerated within the wrongful death counts as well as Ms. McCardle's individual claims for negligence, and any emotional distress.

(7) Plaintiff shall file an amended complaint within 30 days of the date of this order.